**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:08cv576**

| | |
|---|---|
| **PRECISION LINKS INCORPORATED,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **USA PRODUCTS GROUP, INC. and** ) | |
| **HOME DEPOT U.S.A., INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Preliminary Injunction. [Doc. 38]. For the reasons that follow, the Plaintiff's

Motion is denied.

## I.    PROCEDURAL HISTORY

The Plaintiff Precision Links Incorporated ("Precision Links") brought

this action on December 15, 2008, against the Defendants USA Products

Group, Inc. ("USA Products") and Home Depot USA, Inc. ("Home Depot")

(collectively "Defendants"), alleging infringement of U.S. Patent No.

5,673,464, issued October 7, 1997 ("the '464 Patent").[1]  [Doc. 1].  The

_____

[1]The Plaintiff also asserted a claim under the North Carolina Unfair and
Deceptive Trade Practices Act (UDTPA), but that claim has been dismissed.  [Doc. 18].

Defendants filed their Answer and Counterclaim on April 8, 2009, denying infringement and asserting a claim of invalidity.  [Doc. 20].

On May 19, 2009, the Plaintiff filed a Motion for Preliminary Injunction [Doc. 25], but this motion was subsequently stricken due to its failure to comply with the type requirement and page limitation set forth in the Pretrial Order and Case Management Plan.  [Doc. 37].  The Plaintiff re-filed its Motion in conformity with the type requirement and page limitation on June 16, 2009. [Doc. 38].  In support of the Motion, the Plaintiff submitted the Declaration of Mark Whittaker ("Whittaker Declaration").  [Doc. 38-3].  The Defendants filed their Opposition to the Plaintiff's Motion on June 29, 2009 [Doc. 39], along with Objections to the Whittaker Declaration.  [Doc. 40].  The Plaintiff filed a Response to the Defendants' Objections [Doc. 43] and a Reply brief [Doc. 42] on July 13, 2009.  The Court held a hearing on the Plaintiff's Motion and the Defendants' Objections to the Whittaker Declaration on September 15, 2009.

Having been fully briefed and argued, the Plaintiff's request for injunctive relief is now ripe for disposition.

## II.    FACTUAL BACKGROUND

The invention disclosed in the '464 Patent relates to a "Cargo Securement System and Tie Down Strap," which is essentially a tie-down

strap of the type used to restrain cargo during transport. One of the central features of the claimed invention is a set of openings in the main body of the strap that allows the body of a second identical strap to pass through and be redirected. See '464 Patent, Fig. 10.

The Plaintiff is the record owner of the '464 Patent and is the manufacturer of the adjustable tie-down strap that is claimed to be covered by the Patent. [Doc. 1 at ¶8]. The Plaintiff and its licensees have sold these tie-down straps in various retail outlets throughout the United States, including Home Depot. [Id. at ¶12].

The Defendant USA Products is the manufacturer and/or importer of the CARGO BOSS Cargo Control Rubber Tarp Strap ("the Accused Strap"). [Doc. 1 at ¶15; Doc. 20 at ¶15]. USA Products sells the Accused Strap to Home Depot, which has offered and continues to offer the Accused Strap for sale in several of its stores, including stores in this district. [Doc. 1 at ¶15]. The Plaintiff competes directly with USA Products to have their adjustable tie-down straps sold in retail outlets such as Home Depot stores, and indirectly for retail customers who wish to purchase adjustable tie-down straps. A licensee of the Plaintiff previously sold tie-down straps to Home Depot stores,

but Home Depot stopped selling the Plaintiff's straps when it began carrying the Accused Straps.  [Id. at ¶12].

The Plaintiff alleges literal infringement of Claims 1, 2, and 4 by a single Accused Strap and of Claims 1, 2, 3, 4, 6, 7, and 8 by use of two of the Accused Straps together.  [Doc. 1 at ¶¶ 17, 18].  Claims 2, 3, 4, and 7 are dependent claims of Claims 1, 6, and 8.  For the sake of simplicity, the parties have agreed to limit the preliminary injunction analysis to Claim 1 only.

Claim 1 of the '464 Patent provides as follows:

> 1.    A tie down strap extendable between attachment locations in at least intermittent abutment with cargo to restrain movement of the cargo, comprising:
>
> two end portions and an elongateable linearly extending elastic main body portion disposed therebetween,
>
> means formed in at least a first said end portion thereof for attaching said main body portion to an attachment location, and
>
> a plurality of openings integrally formed within and extending in a sequential manner linearly aligned along said linearly extending main body portion intermediate said end portions, **each said opening being dimensioned for the passage therethrough of a main body portion of a second identical tie down strap for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated**.

'464 Patent, Col. 6, line 56 to Col. 7 line 4 (emphasis added).

## III.    OBJECTIONS TO THE WHITTAKER DECLARATION

As a preliminary matter, the Court will address the Defendants' Objections to the Whittaker Declaration submitted in support of the Plaintiff's Motion.[2]

Mark Whittaker is the President of Precision Links, as well as the inventor of the subject matter of the '464 Patent. [Doc. 44 at ¶1].  Prior to the commencement of this lawsuit in December 2008, Whittaker purchased the Accused Strap at a Home Depot store in Charlotte, North Carolina.  [Id. at ¶2]. On later visits to Home Depot stores, Whittaker observed that the Accused Straps continued to be offered for sale.  [Id. at ¶3].  In Whittaker's estimation, the Accused Strap is a "substantial copy" of and is "visually identical" to the Precision Links strap that is claimed to be covered by the '464 Patent.  [Id. at

---

[2]At the preliminary injunction hearing, the Court questioned whether the Whittaker Declaration should be considered at all because Whittaker states that the statements set forth in his Declaration "are true to the best of my knowledge, *information, and belief*" [Doc. 38-3 at ¶16] (emphasis added), a statement which appears to indicate a lack of personal knowledge of the statements asserted therein.  In response to the Court's inquiry, Plaintiff's counsel requested an opportunity to submit an amended declaration to clarify the basis of Whittaker's knowledge for the statements asserted in his Declaration.  The Court granted Plaintiff's counsel leave to file an amended declaration, which was filed the day following the hearing. Whittaker's Amended Declaration [Doc. 44], while otherwise identical in substance, makes clear that the assertions made in said Declaration are made on Whittaker's "own personal knowledge," and he declares under penalty of perjury that such statements "are true and correct."  [Id. at ¶16].

¶¶4, 5].  According to Whittaker, the Precision Links strap is made from a type of rubber that is highly resistant to weathering and cracking.  [Id. at ¶6].  In the event that the Precision Links strap is overstretched to the point of breaking, Whittaker states that the break will occur on only one of the "legs" of the strap, thereby preventing a catastrophic failure, or a complete break, of the strap.  [Id. at ¶7].

Whittaker states that the Accused Strap, on the other hand, "appears to be made of an inferior grade of rubber that is not resistant to weathering and cracking due to exposure," and that as a result, "the Accused Strap is substantially more likely to break during overstretching than one of" the Precision Links straps.  [Id. at ¶¶8, 9].  Whittaker opines that because of the inferior grade of rubber used to manufacture the Accused Strap, "the danger of catastrophic breaking and unexpected recoil, as well as associated consumer injury or death, is substantially heightened."  [Id. at ¶9].  Whittaker further opines because of the visual similarities between the Precision Links strap and the accused product, "there is a substantial likelihood that a consumer injured by one of the Accused Straps would mistakenly believe that [Precision Links] is the manufacturer of the Accused Straps and force [Precision Links] to defend itself in a product liability lawsuit."  [Id. at ¶10].

Whittaker further states that because the Accused Straps are made of an inferior, less expensive grade of rubber, the Defendants are able to sell their straps for less than what Precision Links can sell their products, and that as a result, consumers are more likely to choose the Defendants' straps than the Plaintiff's, resulting in lower revenues, exclusion from retail outlets, and diminution of the value of Precision Links as a going business concern. [Id. at ¶¶11, 12].

The Defendants object to paragraphs 6 through 12 of the Whittaker Declaration, arguing that Whittaker offers improper and unqualified expert testimony and that his opinions lack a proper foundation. Further, the Defendants contend that Whittaker's opinions are not relevant to the issue of infringement, and that even if such opinions are relevant, their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of waste of time. [Doc. 40].

In response, the Plaintiff argues that as the inventor of the subject matter of the '464 Patent, Whittaker is duly qualified to testify as an expert regarding the straps at issue in this litigation, and that this experience provides a proper foundation for his opinions. With respect to the issue of relevancy, the Plaintiff concedes that Whittaker's opinions are not necessarily

relevant to the issue of infringement, but argues that such opinions are relevant to other issues before the Court, such as whether the Plaintiff has made the requisite showing of irreparable harm to justify the imposition of a preliminary injunction. Finally, the Plaintiff argues that the highly probative nature of this evidence outweighs any prejudice that might result to the Defendants by the consideration of this evidence. [Doc. 43].

As the inventor of the Precision Links strap, and as president of the company which manufactures said strap, Whittaker may well have a sufficient factual basis for his opinions as set forth in paragraphs 6 and 7 of his Declaration regarding the composition of the Precision Links strap and its performance when overstretched. While Whittaker's experience may serve as a foundation for his opinions regarding the strap manufactured by the Plaintiff, however, such experience without more does not qualify him to proffer opinions regarding the strap manufactured and/or imported by the Defendant. Whittaker does not provide any factual basis for his assertions regarding the composition of the rubber used to manufacture the Accused Strap or its ability to resist weathering or cracking, nor does he claim to have performed any testing of the Accused Strap to support these opinions. Similarly, Whittaker demonstrates no foundation for his statements regarding

the manufacturing costs of the Accused Straps or the preferences of consumers when choosing which strap to purchase. Furthermore, Whittaker's opinion regarding the potential for catastrophic failure of the Accused Strap resulting in injuries and/or deaths of consumers, as well as the potential for subsequent product liability lawsuits, is merely speculation about what *might* occur in the future *if* the Accused Strap fails and *if* a consumer is injured.

For these reasons, the Defendants' Objections to paragraphs 8 through 12 of the Whittaker Declaration are sustained, and the Court will not consider these portions of the Declaration in considering the Plaintiff's request for injunctive relief.

## IV.    STANDARD OF REVIEW

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Resources Defense Council,__ U.S. __, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  Id. at 376.  Rather, the Court in each case "must weigh and measure each factor against the other factors and against the form and magnitude of the

relief requested." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001) (quoting Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451 (Fed. Cir. 1988)). Ultimately, a patentee's entitlement to preliminary injunctive relief is a matter of discretion with the Court. Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1375 (Fed. Cir. 2009).

The Plaintiff has the burden of demonstrating that, if this case were tried, it would likely prevail in proving by a preponderance of the evidence that the Defendants have infringed the '464 Patent and that the Defendants could not prove by clear and convincing evidence that the '464 Patent is invalid. See Titan Tire, 566 F.3d at 1376.

## V.    ANALYSIS

### A.    Likelihood of Success on the Merits

#### 1.    Infringement

The analysis of a literal infringement claim involves two steps: first, the claims must be properly construed to determine their scope, and second, the construed claims must be applied to the accused device. Elbex Video, Ltd. v. Sensormatic Electronics Corp., 508 F.3d 1366, 1370 (Fed. Cir. 2007). The construction of claims is a question of law for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 372, 116 S.Ct. 1384, 1387, 134

L.Ed.2d 577 (1996); <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (<u>en banc</u>).  The comparison of the properly construed claims to the accused device is typically a question of fact for the jury.  <u>Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.</u>, 262 F.3d 1258, 1267 (Fed. Cir. 2001).

### a.    Preliminary Construction of Claim 1

The Court has received only excerpts of the '464 Patent's prosecution file history.  The Court therefore will undertake only a preliminary construction of Claim 1 for the purposes of this preliminary injunction motion.

In construing claim terms, "the court should look first to the intrinsic evidence of record, <u>i.e.</u>, the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."  <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted).  The Court should give the disputed claim terms "their ordinary and accustomed meaning as understood by one of ordinary skill in the art."  <u>Bell Atlantic</u>, 262 F.3d at 1267; <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

In addition to examining the intrinsic evidence, the Court may consider certain extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises." Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995). While extrinsic evidence may be useful in "shed[ding] ... light on the relevant art," it is "less significant than the intrinsic record in determining the 'legally operative meaning of disputed claim language.'" C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004) (quoting in part Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n, 366 F.3d 1311, 1318 (Fed. Cir. 2004)).

For the purposes of this preliminary injunction motion, the parties agree that the only term in Claim 1 that requires construction at this time is the phrase "each said opening being dimensioned for the passage therethrough of a main body portion of a second identical tie down strap for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated."

Precision contends that the first part of this limitation, "each said opening being dimensioned for the passage therethrough of a main body portion of a second identical tie down strap" should be construed to mean that the openings along the main body portion of the strap must be large enough

(i.e., "dimensioned") to allow the main body portion of a second identical tie down strap to pass through the opening. Precision contends that while this limitation implies a relative limit on the cross-sectional size of the main body portion, there are no limitations directed to the size of the main body portion found in the claim. Thus, it is Precision's position that the test for whether this claim limitation is satisfied is met is simply whether it is *possible* to pass the main body portion of another identical strap through the openings. [Doc. 38 at 16-17].

With respect to the second part of this limitation, "for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated," Precision contends that this phrase should be construed to refer to the impact of passing the second tie down strap through an opening in the main body portion of the first tie down strap. Precision argues that this limitation is best illustrated in Figure 10, which shows one of the straps (49) being forced to deviate from its straight-line path (44) by its placement through an opening in the crossing strap (38). [Doc. 38 at 18].

The Defendants contend, on the other hand, that the phrase "each said opening being dimensioned for the passage therethrough of a main body

portion of a second identical tie down strap for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated" should be construed to mean that upon elongation of the first strap, the plurality of openings in the strap become dimensioned for the passage therethrough of a main body portion of a second identical tie down strap, thus permitting redirection of the second identical tie down strap. Specifically, the Defendants argue that the phrase "dimensioned for the passage therethrough" means that, upon elongation of the first strap, either:

(1)     the width (X) of the openings of the first strap is greater than the depth (D) of the second strap and the length (Y) of the openings of the first strap is greater than the width (W) of the second strap; or

(2)     the width (X) of the openings of the first strap is greater than the width (W) of the second strap and the length (Y) of the openings of the first strap is greater than the depth (D) of the second strap.

[Doc. 39 at 15].

Based on the record presented, the Court finds that the Plaintiff has failed to make a sufficiently strong showing that this claim should be construed to mean that the openings of the strap are large enough so that it is *possible* to pass a second strap therethrough. Plaintiff's proposed

construction effectively reads out the "dimensioned for the passage therethrough" limitation required by the claim. The intrinsic evidence in the record makes clear that the strap becomes "dimensioned" for the passage therethrough of a second strap *by the elongation* of the first strap. See '464 Patent Abstract ("The openings . . .are dimensioned to receive therethrough a main body portion of another strap when the main body portion defining the opening is elongated"); Col. 2, lines 23-29 ("each opening being dimensioned for the passage therethrough of a main body portion of a tie down strap when the elastic main body portion defining the openings is stretched or otherwise elongated"); Col. 2, lines 54-55 ("each opening is stretchable to accommodate the passage therethrough by another strap"); Col. 5, lines 5-7 ("Hence, upon elongation of the strap 10, each opening 20 becomes dimensioned for receipt therethrough of a like but unstretched strap according to the present invention."); Col. 5, lines 12-14 ("the strap of the present invention features openings which are dimensioned upon elongation of the strap for receipt therethrough of another like strap"); Col. 5, lines 28-31 ("the elongated strap 10 through which a strap is twice extended"); Col. 5, lines 38-42 ("each one of the openings in the main body portion of each strap is dimensioned so that,

upon elongation of its respective strap, a main body portion of another strap may pass therethrough").[3]

The Defendants urge the Court to further construe this limitation as requiring that the openings be of particular relative dimensions (i.e., X>D and Y>D or X>W and Y>D). This construction, however, finds no support in the plain language of the claim. Rather, this proposed limitation is taken directly from the description of the preferred embodiment of the invention as set forth in the specification. The Federal Circuit has cautioned that a claim term should not be limited to its preferred embodiments. See <u>C.R. Bard</u>, 388 F.3d at 865. Moreover, the description of the preferred embodiment on which the Defendants rely itself states that the ratio of length to width or width to depth is merely "preferable." <u>See</u> '464 Patent, Col. 4, line 67 to Col. 5, line 4 ("the elongated dimension Y' of the opening in the lengthwise direction *preferably* becomes greater than the width W of an unstretched strap, and the contracted dimension X' of the opening 20 in the widthwise direction of the

---

[3]This construction of "dimensioned" is also consistent with statements made by the Applicant during the prosecution of the '464 Patent in distinguishing the prior art. <u>See</u> Doc. 39-7 at 20 ("One of ordinary skill in the art at the time of the invention would be taught by Hartman the benefits and techniques for drastically limiting the degree to which a tie down strap can be stretched, i.e., to the point where the tie down strap is just stretchable enough for facilitating hooking and unhooking of S-shaped hooks through anchor holes in the strap, *which is substantially less than the degree of stretching required for the main body portion of a strap to pass through an anchor hole*.") (emphasis added).

strap 10 *preferably* remains greater than the depth of the strap D") (emphasis added). Thus, this particular construction of the claim language must be rejected.

Based on the record presented, the Court concludes that the phrase "each said opening being dimensioned for the passage therethrough of a main body portion of a second identical tie down strap for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated" should be preliminarily construed to mean that upon elongation of the first tie down strap, the plurality of openings in the strap become dimensioned for the passage therethrough of a main body portion of a second identical tie down strap, thus permitting redirection of the second identical tie down strap.

## b. Application of Claim 1 to the Accused Strap

Having conducted a preliminary construction of the claim at issue, the Court now must apply the claim's limitation to the accused device. For this, the Plaintiff has provided an exemplar of the Accused Strap for the Court's examination, which the Defendant USA Products has stipulated is its product. Applying this limitation to the Accused Strap, the Court finds that the Plaintiff

has failed to meet its burden of demonstrating that it is likely to succeed at trial on its infringement claim.

An examination of the Accused Strap reveals that it is made of rubber and has a series of oval-shaped openings along the main body portion. The outside of each opening is surrounded by a small ridge of rubber which represents the outermost limits of the top and bottom of the main body portion of the strap. The main body portion of the Accused Strap is integrally joined with two bulbous ends, which are noticeably larger than the main body portion of the strap. There is a hole in each of the bulbous ends through which a S-shaped hook is inserted.

Upon elongation of the Accused Strap, the openings become longer and narrower than the width and depth of a second identical strap. In order for the second strap to pass through one of the openings in the first strap, the S-shaped hook must be removed, and the bulbous end portion of the strap must be forced into the opening. The pulling through of the bulbous end requires some exertion. The forcing of this bulbous end deforms the opening so as to dimension it for the passage therethrough of the second strap. Because of the small ridge of rubber surrounding each of the openings of the identical

second strap, the opening of the first strap must again be deformed so as to allow the passage therethrough of the ridged portion of the second strap.

The claim requires that the openings of the strap be dimensioned for the passage of the second trap *by the elongation* of the strap, not by forcing the second strap through the opening. Because the openings of the Accused Strap are not dimensioned upon elongation for the passage therethrough of a second identical strap, the Court finds and concludes that the Plaintiff has not carried its burden of demonstrating a likelihood of success on the issue of infringement.

### 2.    Validity

A duly issued patent is presumed to be valid, and the Defendants have the burden of proving otherwise by clear and convincing evidence. <u>See</u> 35 U.S.C. § 282. The Court need not decide the issue of validity, however, as the Plaintiff has failed to demonstrate a reasonable likelihood of success on the issue of infringement.

## B.    Irreparable Harm

The second factor that the Court must consider is whether the Plaintiff has shown that it will suffer irreparable injury if the requested injunctive relief is denied.[4]

The Plaintiff argues that it is suffering irreparable harm and will continue to suffer that harm in the absence of injunctive relief, as the continued sale of the Accused Strap has resulted in lost revenue and diminished market share.

---

[4]In the past, courts have recognized a rebuttable presumption of irreparable harm upon a clear showing of a likelihood of success on the merits.  See, e.g., Amazon.com, 239 F.3d at 1350; Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 973 (Fed. Cir. 1996).  In 2006, however, the Supreme Court rejected the notion of a presumption of irreparable harm arising in the context of a permanent injunction in a patent action.  See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).  As a result of this decision, some courts have concluded that the presumption of irreparable harm no longer arises at the preliminary injunction stage either.  See, e.g., Everett Labs., Inc. v. Breckenridge Pharm., Inc., 573 F.Supp.2d 855, 867 (D.N.J. 2008) (refusing to make a finding regarding the existence of a presumption of irreparable harm in light of eBay); Tiber Labs., LLC v. Hawthorn Pharms., Inc., 527 F.Supp.2d 1373, 1380 (N.D. Ga. 2007) (concluding that "eBay does not leave room for a presumption of irreparable injury in patent cases, whether raised at the preliminary or permanent injunction phase").  Other courts have simply declined to address the issue.  See Nat'l League of Junior Cotillions, Inc. v. Porter, No. 3:06-cv-508-RJC, 2007 WL 2316823, at *6 (W.D.N.C. Aug. 9, 2007) ("Because neither the Supreme Court nor the Fourth Circuit has explicitly extended eBay's reasoning to preliminary injunctions, and given the slight record in this case, the Court will not attempt to resolve eBay's impact at the preliminary injunction stage") (trademark case), aff'd, 280 F. App'x 322 (4th Cir. June 6, 2008).

This Court need not address this issue either, for even if the presumption of irreparable harm is still valid after eBay, such presumption would be applied only if the Plaintiff had made "a clear or strong showing of likelihood of success on the merits," Altana Pharma AG v. Teva Pharms. USA, Inc., 532 F.Supp.2d 666, 681-82 (D.N.J. 2007), aff'd, 566 F.3d 999 (Fed. Cir. 2009), which the Court finds that the Plaintiff has not done in this case.

Further, the Plaintiff argues that the Defendants' straps are made from an inferior grade of rubber that is substantially more likely to break catastrophically during overstretching, and in the absence of clear markings identifying the infringing strap, allowing these straps to continue to be sold to the public increases the likelihood that after a product failure occurs, the Plaintiff will be falsely identified as the manufacturer and its reputation and goodwill will be irreparably tarnished. [Doc. 38 at 19-21].

The Plaintiff has not carried its burden of showing irreparable harm in this case. First, the Plaintiff waited over five months after filing its Complaint to seek preliminary injunctive relief. This delay is simply unjustified and demonstrates a lack of any irreparable harm. See Playboy Enters., Inc. v. Netscape Communications Corp., 55 F.Supp.2d 1070, 1080, 1090 (C.D. Cal.) (finding five-month delay in seeking injunctive relief "demonstrates the lack of any irreparable harm"), aff'd, 202 F.3d 278 (9th Cir. 1999).

Second, the manufacture of the Accused Strap has been discontinued and fewer than 13,000 remain in inventory at Home Depot. Since sales of the Accused Strap will soon cease, the harm to the Plaintiff is calculable with certainty and is compensable in money damages if the Plaintiff prevails on the

merits.  <u>See</u> <u>Reebok Int'l Ltd. v. J. Baker, Inc.</u>, 32 F.3d 1552, 1558 (Fed. Cir. 1994).

Third, the Plaintiff's claims of harm to its goodwill arising from the likelihood of injury to consumers and potential lawsuits resulting therefrom are remote, speculative allegations of possible harm in the future.  These are the same type of allegations which led this Court to dismiss the Plaintiff's claim under the UDTPA.  [<u>See</u> Doc. 18].  Such speculative allegations are insufficient to satisfy the Plaintiff's burden of demonstrating irreparable harm. <u>See</u> <u>Direx Israel, Ltd. v. Breakthrough Med. Corp.</u>, 952 F.2d 802, 816 (4th Cir. 1991) (holding district court erred in granting injunctive relief where the claimed harm was "admittedly not present or immediate" but rather was "conditioned on possible future events").

Finally, the Plaintiff's allegations that the continued sale of the Accused Strap will likely cause loss of revenue and diminished market share are insufficient to demonstrate irreparable harm in this case, as the Plaintiff has not shown that these economic harms or losses could not be readily compensable by money damages.  <u>See</u> <u>Nutrition 21 v. United States</u>, 930 F.2d 867, 871 (Fed. Cir. 1991) ("neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof

of special circumstances justifying the extraordinary relief of an injunction prior to trial").

## C.    Balance of Hardships and Public Interest

Because the Plaintiff has failed to establish either a likelihood of success on the merits of its infringement claim or irreparable harm, the Court need not make findings with respect to the balance of hardships or the public interest.  See Reebok Int'l., 32 F.3d at 1556.

# VI.    ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Preliminary Injunction [Doc. 38] is **DENIED**.

**IT IS SO ORDERED.**

Signed: September 22, 2009

Martin Reidinger
United States District Judge