**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:08cv576**

| | |
|---|---|
| **PRECISION LINKS INCORPORATED,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **O R D E R** |
| ) | |
| **USA PRODUCTS GROUP, INC. and** ) | |
| **HOME DEPOT U.S.A., INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| ——————————————————) | |

**THIS MATTER** is before the Court on the Defendants' Motion for

Costs and Attorneys' Fees [Doc. 93].

## I.    PROCEDURAL BACKGROUND

This is an action for patent infringement involving U.S. Patent No.

5,673,464 ("the '464 Patent"). The invention disclosed in the '464 Patent

relates to a "Cargo Securement System and Tie Down Strap," which is

essentially a tie-down strap used to restrain cargo during transport.

Plaintiff Precision Links Incorporated is the owner of the patent-in-suit and

the manufacturer of the adjustable tie-down strap that is claimed to be

covered by the Patent. [Doc. 1 at ¶8]. Defendant USA Products Group,

Inc. ("USA Products") is alleged to import the CARGO BOSS cargo strap

("the accused strap"). [Doc. 1 at ¶15]. USA Products is alleged to have

sold the accused strap to Defendant Home Depot USA, Inc. ("Home

Depot"), which is alleged to have sold the accused strap in several of its

stores. [Doc. 1 at ¶15].

The Plaintiff initiated this action against the Defendants on December

15, 2008, asserting a claim for infringement of the '464 Patent (Count One)

and a claim for unfair and deceptive trade practices under N.C. Gen. Stat.

§ 75-1.1, et seq. ("Count Two"). [Doc. 1]. The Plaintiff alleged literal

infringement of Claims 1, 2, and 4 by a single Accused Strap and of Claims

1, 2, 3, 4, 6, 7, and 8 by use of two of the Accused Straps together. [Doc. 1

at ¶¶ 17, 18]. Claims 1, 6, and 8 are independent claims. Claims 2, 3, 4,

and 7 are dependent claims of Claims 1, 6, and 8.

On February 27, 2009, the Defendants moved to dismiss Count Two

for failing to state a claim upon which relief could be granted. [Doc. 14].

On March 25, 2009, the Court granted the Defendants' motion and ordered

an answer to be filed by April 8, 2009. [Doc. 18]. The Defendants filed

their Answer as instructed, denying liability and asserting counterclaims for

declaratory judgments of non-infringement and invalidity. [Doc. 20].

Thereafter, the Court entered a Pretrial Order and Case Management Plan [Doc. 24], setting certain scheduling deadlines and establishing a claim construction schedule.  [Doc. 24].

On May 19, 2009, the Plaintiff filed a motion for a preliminary injunction [Doc. 25], but this motion was stricken due to its failure to comply with the type requirement and page limitation set forth in the Pretrial Order and Case Management Plan.  [Doc. 37].  The Plaintiff subsequently re-filed its motion in conformity with the type requirement and page limitation on June 16, 2009.  [Doc. 38].  The Court denied the Plaintiff's request for preliminary injunctive relief on September 22, 2009.  [Doc. 46].[1]

On May 28, 2009, the Defendants moved for entry of default against the Plaintiff on the Defendants' counterclaims.  [Doc. 32].  Finding the Plaintiff's failure to answer the counterclaims "to be more of a technical oversight than a failure 'to plead or otherwise defend' the action," [Doc. 41 at 4], the Court denied the Defendants' motion on July 2, 2009.  [Id. at 5].

In December 2009, the parties moved for construction of the claims. [Docs. 52, 55].  On June 10, 2010, the Court held a claim construction

---

[1]Following the entry of this Order, the Defendants moved for summary judgment based on the preliminary claim construction that the Court performed in denying Plaintiff's request for injunctive relief.  [Doc. 48].  The Defendants' motion was denied without prejudice as premature. [Doc. 51].

hearing. On June 17, 2010, the Court issued its Claim Construction Order construing the terms of the '464 Patent. [Doc. 71]. In light of the Court's claim construction ruling, the Defendants renewed their motion for summary judgment on June 30, 2010. [Doc. 72]. Citing the parties' settlement negotiations, the Plaintiff filed a consent motion for an extension of time to respond to the summary judgment motion [Doc. 77], which was granted. On July 23, 2010, the Plaintiff filed a response to the summary judgment motion, noting its agreement with the Defendants "that the claim construction entered by the Court clearly excludes the accused straps from coverage by" the '464 Patent. [Doc. 78 at 1]. The Court therefore entered summary judgment in favor of the Defendants on August 3, 2010. [Doc. 80].

On August 10, 2010, the Defendants, with the consent of the Plaintiff, filed a motion for an extension of time to file a motion for costs and attorneys' fees. [Doc. 81]. On August 11, 2010, the Court allowed a limited extension, giving the Defendants until sixty days after entry of Judgment to file their motion. In the event that a notice of appeal was filed, the Court instructed the Defendants to seek an additional extension of this deadline. [Doc. 82].

The Plaintiff filed a Notice of Appeal to the Federal Circuit on September 7, 2010, 35 days after entry of judgment. [Doc. 83].

On September 30, 2010, the Defendants filed another consent motion for an extension of time in which to file their motion for fees and costs. [Doc. 87]. On October 1, 2010, the Court granted the Defendants' motion and extended the deadline for filing such motion to sixty days after resolution of the Federal Circuit appeal. [Doc. 88].

The Defendants moved to dismiss the Plaintiff's appeal in the Federal Circuit on the grounds of untimeliness. In response to this motion, the Plaintiff filed a "motion for miscellaneous relief" in this Court, asking the Court to characterize Plaintiff's July 23, 2010 summary judgment response as a notice of appeal. Alternatively, the Plaintiff moved the Court to amend its August 11, 2010 Order to explicitly extend the time for filing an appeal or to treat the Plaintiff's Notice of Appeal as a motion for extension of time in which to file a notice of appeal. [Doc. 89].

On December 8, 2010, the Federal Circuit dismissed the Plaintiff's appeal as untimely. Precision Links Inc. v. USA Prods. Group, Inc., No. 2010-1538, 2010 WL 5080939 (Fed. Cir. Dec. 8, 2010). Thereafter, this

Court denied the Plaintiff's motion for miscellaneous relief as moot. [Doc. 92].

On February 7, 2011, the Defendants filed the present motion for an award of fees and costs, arguing that this case is "exceptional" within the meaning of 35 U.S.C. § 285. [Doc. 93]. The Plaintiff filed a response opposing the Defendants' motion on February 25, 2011. [Doc. 97]. The Defendants filed a reply on March 7, 2011. [Doc. 98].

Having been fully briefed, this matter is now ripe for disposition.

## II.    DISCUSSION

A district court has the authority to award attorneys' fees to a prevailing party in a patent case upon determining that the case is "exceptional." 35 U.S.C. § 285. A finding that a case is exceptional is warranted "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). "Absent misconduct in conduct of the

litigation or in securing the patent," a finding that a case is exceptional is appropriate only where the prevailing party can show by clear and convincing evidence that "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Id. Under this standard, "the plaintiff's case must have no objective foundation, and the plaintiff must actually know this." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011). The "objectively baseless" standard under section 285 is identical to the "objective recklessness" standard used to determine enhanced damages and attorneys' fees for willful infringement under In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007) (en banc). iLOR, 631 F.3d at 1377. "Thus, 'objective baselessness' depends not on the state of mind of the party against whom fees are sought, but instead on an objective assessment of the merits of the challenged claims and defenses." Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 544 (Fed. Cir. 2011) (citations and internal quotation marks omitted). Unless a claim "is 'so unreasonable that no reasonable litigant could believe it would succeed,' it cannot be deemed objectively baseless for purposes of awarding attorney fees under section 285." Id. (quoting iLOR, 631 F.3d at 1377).

In the present case, the Defendants argue that this Court should find this case to be exceptional because Plaintiff's claim interpretation and infringement theory were objectively baseless, and because this litigation was brought and pursued in subjective bad faith. Additionally, the Defendants argue that Plaintiff's litigation misconduct justifies the imposition of an attorneys' fee award. [Doc. 96]. The Plaintiff counters that its proposed claim construction was supported by a plausible reading of the intrinsic evidence. It further denies the existence of any bad faith in bringing the litigation, arguing that it had conducted an appropriate pre-suit investigation and obtained an opinion of counsel as to infringement prior to filing suit. Finally, the Plaintiff denies engaging in any litigation misconduct, arguing that much of the expense claimed by the Defendants is attributable to their unreasonable impatience and to the combative nature of their litigation strategy. [Doc. 97].

Central to the issue of infringement in this case was the construction of the phrase "dimensioned for the passage therethrough," a phrase which appears in each of the independent claims (Claims 1, 6, and 8) to describe the openings of the claimed strap. In Claim 1, for example, the openings are described as "being dimensioned for the passage therethrough of a

main body portion of a second identical tie down strap for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated." '464 Patent, Col. 6, line 64 to Col. 7, line 4. Plaintiff maintained throughout this litigation that the phrase "dimensioned for the passage therethrough" as used in Claim 1 means that each of the openings are large enough to allow the main body portion of another strap to pass through them, even if some deformation of the first strap must occur as the main body portion of the second strap passes through. [See Doc. 56 at 10-11]. The Court rejected this proposed construction, both in denying the Plaintiff's motion for preliminary injunction and in its final Claim Construction Order. [See Docs. 46 at 17, 71 at 18-19]. In rejecting the Plaintiff's proposed construction, the Court reasoned that the plain language of Claim 1 did not support the Plaintiff's contention that the opening in the first strap could be "dimensioned" by the very act of passing the second strap through the opening:

> The commonly accepted meaning of the term "dimensioned" is "form[ed] to the required dimensions." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/dimensioned (last visited June 10, 2010). Thus, the claim describes a series of openings that are "form[ed] to the dimensions required" for the passing through of a second strap. The claim further describes each of the

openings in the main body portion of the tie down strap as "being dimensioned. . . *when* the elastic main body portion defining said opening is elongated." '464 Patent, Col. 6, line 66 to Col. 7, line 4 (emphasis added). The plain meaning of this claim language suggests that the first strap must achieve the dimensions required for the passage therethrough of the main body of a second strap *by the act of elongation*.

The plain language of Claim 1 does not support the Plaintiff's contention that passage of the second strap may be accomplished by deformation of the strap opening during the passage itself. The claim provides that each opening is "dimensioned for the passage therethrough" of the main body portion of a second strap. Notably, the claim does not recite that the opening is dimensioned *by* the passage therethrough of a second strap. Indeed, if the strap opening was not properly dimensioned prior to the second strap passing through, such that deformation of the strap opening was required to allow the second strap to pass through, then the opening was not properly "dimensioned" by the elongation of the strap and therefore would not be encompassed by the plain language of this claim.

[Doc. 71 at 14-15].

The Court went on to analyze the intrinsic evidence and determined that dimensioning of the strap by elongation was "the *only* construction supported by the plain language of the claim and the intrinsic evidence of record." [Id. at 18] (emphasis added). In so concluding, the Court specifically found that the Plaintiff's proposed construction of the

10

"dimensioned" element of Claim 1 lacked any support in the specification or

prosecution history:

> Under the Plaintiff's proposed construction of the "dimensioned" element, some 'minor deformation' of the strap's opening would be permitted as the main body portion of the second strap passes through the opening, but any "substantial deformation" would not . . . . **This proposed construction finds no support in any of the intrinsic evidence.** No reference is made in the claim language to any deformation of the strap, whether "minor" or "substantial." Moreover, **there is nothing in the specification which would support the Plaintiff's reading of this claim language. . . .**
>
> \*      \*      \*
>
> The Plaintiff contends that Claim 1 merely requires that "the openings are large enough to allow the second strap through without excessively loading the first strap" and the "recommended stretching tolerance of the [first] strap is not exceeded." [Doc. 56 at 10]. **This construction, however, is not supported by any intrinsic evidence.** Nothing in the specification refers to "excessively loading" the strap or the "recommended stretching tolerance" of such strap. **Nor does the prosecution history cited by the Plaintiff support this proposed construction.** In the passage cited by the Plaintiff [Doc. 53-2 at 57], the Applicant urged for the allowance of Claim 1 by expressly arguing that the elongateability of the claimed strap permits it to be dimensioned for the passage therethrough of another strap. Nothing in this section of the prosecution history refers to "excessive loading" or a "recommended stretching tolerance" as to the reason for the claimed "dimensioned" limitation.

[Id. at 16, 17-18] (emphasis added).

The Court is mindful that "[c]laim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language." Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1301 (Fed. Cir. 2004). In determining whether a party's claim interpretation constitutes evidence of bad faith, the issue is not whether such interpretation was correct, "but only whether it was frivolous." Id. A claim interpretation is not frivolous where it "follow[s] the standard canons of claim construction and [is] reasonably supported by the intrinsic record." Id. Here, the Plaintiff's claim interpretation found no support either in the plain language of the claims or the intrinsic record of the patent at issue and was therefore frivolous.

The Plaintiff's bad faith is further evidenced by the inadequacy of the investigation undertaken prior to filing this lawsuit. The Plaintiff sought the opinion of patent counsel to evaluate the prospect of a patent infringement suit against the Defendants, and Plaintiff received such an opinion in the form of a letter dated November 26, 2008.[2] In this letter, patent counsel

---

[2]In support of its opposition to the Defendants' motion, the Plaintiff has submitted this letter to the Court [Doc. 97-1] and has waived any attorney-client privilege that attached to this communication. [See Doc. 97 at 7].

12

concludes that "there is a strong case for direct infringement of claim 1."
[Doc. 97-1 at 4]. He states that he reached this opinion "by analyzing the
claims much as a court considering the question would do, determining
what the meaning of each word is in the context of the specification and
whether any special considerations may have altered the common
meaning of any key words" and then "compar[ing] the claims to the
accused device to determine if each limitation could be fairly said to be
met." [Id.].

A chart attached to the opinion letter purports to "provide[ ] the details
of that analysis." [Id.]. This chart identifies the limitations of Claim 1,
counsel's interpretation of each of these limitations, and an opinion as to
whether each limitation is present in the accused product. [Id. at 6].
Significantly, however, the chart contains no explanation of counsel's claim
construction and his application of the claim limitations to the accused
product. There are no citations to the specification or prosecution history,
and no analysis is provided to explain why counsel construed the patent
terms the way in which he did. Thus, while counsel construed the
"dimensioned" limitation to mean that "[t]he holes are large enough to allow
the main body portion of another strap to pass through them," he offered no

analysis or citations to intrinsic evidence to support this construction. [Id.].

Further, counsel concluded that this limitation is present in the infringing

device [id.], but he did not explain how or why he reached this conclusion.

While recognizing that it is "somewhat difficult to get [the accused strap] to

pass through the hole" [id.], he offers no analysis of how, despite this

difficulty, this claim language can be read to support a finding of

infringement.

Of course, "[t]he fact that an infringement opinion may not have

mentioned every detail of the patented or the accused design does not

necessarily render the opinion wrong or unreliable." Brooks Furniture, 393

F.3d at 1384. Counsel's opinion, however, fails to adhere to the standard

canons of claim construction and is so lacking in any fundamental analysis

or evidentiary support that the Plaintiff's reliance upon this opinion as a

basis for alleging infringement of Claim 1 was simply unreasonable and

reflects a lack of good faith. Indeed, this opinion letter is so utterly lacking

that the Court concludes that no reasonable litigant could believe that an

infringement claim could succeed based on this opinion. See Old Reliable,

635 F.3d at 544.

Counsel's opinion further demonstrates that Plaintiff lacked a good faith basis for bringing an infringement action based on Claims 6 and 8. Patent counsel did not offer any analysis of these claims, as he did not believe that either claim was directly infringed by the accused product. [Id. at 4 ("We have not fully analyzed claims 6 and 8, because those claims require multiple straps, and the straps appear to be sold only in single units -- which allows a single strap to be immediately ruled out for infringement purposes.")]. Nevertheless, counsel opined that these claims "*might* form the basis for a claim for contributory infringement or for infringement by inducement," and thus recommended that these claims be pled as well. [Id.] (emphasis added).

Consistent with this recommendation, Plaintiff specifically alleged infringement of these claims. [See Complaint, Doc. 1 at ¶¶18, 22, 27-28]. Despite counsel's unsupported speculation that "we can make a good argument for contributory infringement or inducement of [Claims 6 and 8], because the [accused] straps are specifically and explicitly designed to be used together" [Doc. 97-1 at 6], the Plaintiff has never identified any acts by the Defendants which would constitute contributory infringement or

infringement by inducement, nor has the Plaintiff identified any third party who engaged in infringing conduct at the behest of the Defendants.

Again, counsel's opinion is so lacking in any fundamental analysis or evidentiary support that the Plaintiff's reliance on this opinion in asserting infringement of Claims 6 and 8 was unreasonable and reflects a lack of good faith. Counsel's opinion is in fact so deficient in this regard that the Court concludes that no reasonable litigant would rely upon it. See Old Reliable, 635 F.3d at 544.

The case presents a scenario markedly different from that presented to the Federal Circuit in Brooks Furniture, 393 F.3d 1378. In that case, while noting that counsel's analysis appeared to be "reasonable, comprehensive, and competent," the district court found counsel's ultimate conclusions regarding infringement to be unreasonable, and therefore, the district court found that the patentee demonstrated bad faith in relying on such opinions in asserting a claim of infringement. Id. at 1383.

The Federal Circuit reversed, concluding that the patentee's reliance on counsel's opinion did not constitute clear and convincing evidence of bad faith:

> The district court described the attorney's opinion as
> appearing to be "reasonable, comprehensive and

competent." Such an opinion cannot be transformed into the opposite extreme of unreliability and incompetence, simply because the court reached a different conclusion on the merits of infringement. Bringing an infringement action does not become unreasonable in terms of [35 U.S.C. § 285] if the infringement can reasonably be disputed. Infringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith. The several opinions of counsel and other expert opinions obtained by [the patentee] are not charged with having been obtained for specious "cosmetic" purposes, and their analysis of the designs is not unreasonable.

Id. at 1384.

Unlike the opinion at issue in Brooks Furniture, the infringement opinion obtained by the Plaintiff in the instant case cannot be said to be "reasonable, comprehensive, and competent." Counsel's opinion does not reflect a detailed review of the proper procedure to follow in determining infringement, nor does it contain any explanation or analysis to support the application of this procedure in comparing the accused products to the patented claims. The unreasonableness of counsel's opinion, and of Plaintiff's reliance on that opinion, stems not from the quality of the conclusion reached but rather from the complete lack of analysis underlying that conclusion.

17

In sum, the Court finds that counsel's opinion is completely devoid of analysis and fails to provide an objective basis for bringing suit for infringement of the '464 Patent. Rather than demonstrate the Plaintiff's subjective good faith, the opinion of counsel instead demonstrates that the Plaintiff's pre-filing investigation was wholly inadequate, that the Plaintiff lacked any intrinsic evidence to support its claim of infringement of Claim 1, and that the Plaintiff lacked any reasonable basis to accuse the Defendants of infringing Claims 6 and 8.

The Defendants have shown by clear and convincing evidence that the Plaintiff instituted this action based on a wholly inadequate and unreasonable pre-filing opinion of counsel, and persisted in relying upon a construction of the claim terms that was both contrary to the plain meaning of those terms and entirely devoid of support in the intrinsic record. For these reasons, the Court concludes that the Plaintiff's infringement claim was objectively baseless and subjectively lacking in good faith.

While these findings alone would be sufficient to deem this case exceptional, the Court further finds several instances of Plaintiff's conduct in this litigation were so vexatious and unjustified so as to warrant the imposition of fees in this case. See Brooks Furniture, 393 F.3d at 1381

(noting case can be exceptional where there has been "vexatious or unjustified litigation . . . or like infractions"). "Where a party engages in litigation misconduct, fees can be awarded pursuant to section 285 even absent clear and convincing evidence that an asserted claim or defense is objectively baseless." Old Reliable, 635 F.3d at 549.

First, the Plaintiff persisted in a frivolous theory that the accused straps were "manufactured of a cheap and inferior material" and that they "pose[d] a substantially increase risk of malfunction and injury," such that the "selling of the accused straps as the substantial equivalent of the Plaintiff's genuine straps" caused the Plaintiff injury. [Doc. 1 at ¶37]. The Plaintiff first asserted this theory by alleging a claim for unfair and deceptive trade practices under North Carolina law. The Defendants moved to dismiss this claim for failure to state a claim. The Plaintiff did not respond to the Defendants' motion within the time required. Instead, eight days after its response was due, the Plaintiff moved for an extension of time to respond; however, in doing so, the Plaintiff failed to offer any explanation for its failure to seek such relief prior to the time the response was due. The Court denied the Plaintiff's request for an extension and

granted the Defendant's motion to dismiss, concluding that the Plaintiff's allegations of actual injury were"speculative."  [Doc. 18 at 7].

Despite the dismissal of the unfair and deceptive trade practices claim, the Plaintiff continued to assert the same speculative allegations in seeking preliminary injunctive relief on its infringement claim.  [See Doc. 38 at 4 (alleging that continued sale of the accused strap was likely to cause irreparable harm to goodwill "by suggesting that the patented design, and not the Accused Strap's inferior rubber, is responsible for failures that are actually caused by these cheap, inferior materials").  In support of its request for injunctive relief, the Plaintiff submitted the Declaration of Mark Whitaker, the inventor of the patented strap.  [Doc. 38-2].  In his Declaration, Whitaker opined that the accused strap "appears to be made of an inferior grade of rubber that is not resistant to weathering and cracking due to exposure," and that as a result, "the Accused Strap is substantially more likely to break during overstretching than one of" the Plaintiff's straps.  [Id. at ¶¶8, 9].  Whittaker opined that because of the inferior grade of rubber used to manufacture the accused strap, "the danger of catastrophic breaking and unexpected recoil, as well as associated consumer injury or death, is substantially heightened" [Id. at

¶9], and that because of the visual similarities between the Plaintiff's strap and the accused product, "there is a substantial likelihood that a consumer injured by one of the Accused Straps would mistakenly believe that [the Plaintiff] is the manufacturer of the Accused Straps and force [the Plaintiff] to defend itself in a product liability lawsuit." [Id. at ¶10]. The Court excluded these opinions, noting that Whitaker failed to provide any factual basis or foundation for his assertions. [Doc. 46 at 8-9]. The Court further found that Whittaker's opinion regarding the potential for catastrophic failure of the accused strap was "merely speculation about what *might* occur in the future *if* the Accused Strap fails and *if* a consumer is injured." [Id. at 9]. Noting Plaintiff's five-month delay in seeking injunctive relief, and the "remote, speculative" nature of Plaintiff's claims of injury to its goodwill, the Court went on to conclude that Plaintiff had failed to demonstrate a likelihood of irreparable harm and denied the request for a preliminary injunction. [Id. at 22, 23].

Furthermore, Plaintiff unnecessarily extended this litigation by filing an untimely notice of appeal with the Federal Circuit and, when it became evident that the Defendants sought to dismiss the appeal due to its untimeliness, by filing a motion in this Court in an effort to salvage the

untimely appeal. Plaintiff's motion asked the Court to recharacterize its summary judgment response brief as a notice of appeal or to otherwise treat its filing of a Notice of Appeal as a motion to extend the time for filing an appeal. In seeking this extraordinary relief, Plaintiff cited no basis in the Federal Rules of Civil Procedure. The Defendants were forced to respond to this motion, in addition to seeking dismissal of the appeal within the Federal Circuit. Plaintiff's actions therefore caused the Defendants to incur needless litigation expense and unnecessarily prolonged the proceedings before this Court. These acts of litigation misconduct further justify the Court's finding that this case is exceptional.

For the foregoing reasons, the Court finds and concludes that this case is "exceptional" within the meaning of 35 U.S.C. § 285. Accordingly, the Court will grant the Defendants' motion for an award of attorneys' fees and costs[3] incurred in defending this litigation.

---

[3]The Plaintiff argues that the Defendants should be denied their costs because they failed to file a bill of costs in a timely manner. [Doc. 97 at 13]. This argument is without merit. The Court's October 1, 2010 Order modified both the timing and procedure for seeking costs by permitting the Defendants to seek such costs by motion and by extending the deadline for filing such motion until sixty days after resolution of the Federal Circuit appeal. [Doc. 88]. The Defendants' motion for costs was therefore both timely and procedurally proper.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Costs and Attorneys' Fees [Doc. 93] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendants shall submit a properly supported fee petition within fourteen (14) days of entry of this Order. The Plaintiff may file a response to the Defendants' fee petition within fourteen (14) days of the filing of the petition. The Defendants may file a reply to the Plaintiff's response within seven (7) days after the filing of the response.

**IT IS SO ORDERED.**

Signed: July 13, 2011

Martin Reidinger
United States District Judge